## Duvall's Executor *versus* Darby *et al.*

*Bill of Exceptions, when improperly Sealed.——Impressions, when Evidence.——Declarations, when inadmissible.*

1. Where the testimony which constitutes a bill of exceptions is received in the trial of a cause, without objection, the court should refuse to sign the bill but leave the party to a prayer for instructions to the jury to disregard it; and where the court below allow the exception, the Supreme Court may treat it as too late and disregard it.

2. Though testimony as to facts within the compass of memory must be distinct and positive, yet where the "*impression*" testified to by a witness, was evidently derived from his *recollection* of the words used, it was evidence to go to the jury.

3. The declarations of the plaintiff's intestate, made to strangers, and not in the transaction between him and one of the defendants, were not *res gestæ*, and were not admissible.

ERROR to the Common Pleas of *Washington county*.

This was an action brought by J. M. Spriggs, executor of the last will and testament of William Duvall against J. W. Darby, Hugh McClelland, and A. Wallace, on an accommodation note for $1650 dated May 29th 1856, signed by defendants, made payable to Darby & Craig and by them endorsed to plaintiff's testator. The plea was *non assumpsit* and payment with leave. The defence was, that Duvall had not purchased the note, but that it had been left with him by Darby as collateral security on the purchase of a note for $300 dated June 4th 1856. In the course of the trial the defendant proved by J. P. Gamble, that he "lived in Washington in the spring of 1856, when he met Darby, who had a note for $1650 signed by defendants, and another for $300 which he offered to sell; that he did not see the note but declined negotiating it; that he met Darby again on the 4th of June 1856, but did not see the notes; that in the evening he met Duvall and asked him how he got along in his trade with Darby, and was told that he had made a nice thing of it, that it did not take much, and that $300 was not much;" and then called R. M. Gibson, who after stating that he had a conversation with Duvall shortly before his death, in which he informed Duvall that Darby was about to fail, testified as follows:—

"Duvall, in reply, said he did not rely on Darby for much money—no sum mentioned; [I can say, my recollection is, the amount was not large—it is merely but an impression; my best belief from what was said is, that the sum was not large; that he did not rely on Darby for much money; it is my best recollection of the substance of the conversation—it is the best belief growing out of an impression made by the words]."

After this witness had been examined, the plaintiff objected to

that portion of his testimony included in brackets, but the court overruled the objection; which was the first error assigned here.

After submitting other evidence in support of the defence relied on, the defendant closed; whereupon the plaintiff offered the testimony of several witnesses as rebutting, and among other things offered to prove by A. B. Wolf, that in the latter part of May 1856, Duvall called on him and notified him, that he (Duvall) wished the witness to get the balance of the $1300 loan ready for him, as he wanted it to help him purchase a note from Darby, on Darby, McClelland, and others, and told witness to be sure and have it ready—the balance was about $900 or $1000—to be followed by proof that the money was paid over to Duvall in a few days thereafter, and that on the next day after the money was paid, Duvall told witness he had bought the note from Darby on him, McClelland, and others. To which testimony defendants objected. The court sustained the objection, and rejected the evidence; which was the second error assigned.

The plaintiff then offered to proved by Dr. Wilson, that some time in the early part of the summer of 1856, the deceased, William Duvall, called on him and requested the loan of some money, telling him that he *was then* buying a note from J. W. Darby; that he wanted a little to make up the amount; that he had on hands about $850, and if the Doctor could let him have $50, he thought he could get the balance from another person. Witness told him that he had not the money by him; that he then left, and in a short time afterwards, Duvall told witness that he had raised the balance of the money and made the purchase; that witness then told him that he had better look sharp, that Darby was rather a doubtful man—that Duvall replied that the note was well secured, as he had Hugh McClelland for bail on it. To which testimony defendants objected. The court sustained the objection, and rejected the evidence; which was the third error assigned.

Plaintiff then offered to prove by Jacob Weirich, that about the last of May or the first of June 1856, J. W. Darby overtook him on the road and wanted to borrow money from him, offering him ten per cent.; that witness replied he had no money to loan; that on the next day witness came up to Washington, and on his way out stopped at the residence of Duvall, and that *then* and *there* Duvall told him that he had bought a note from Darby, which note he showed to witness, stating at the same time that he had given $1250 for it, and made a good thing out of it. Witness then asked him if he thought the note was good; he replied that it was good, for the name of Hugh McClelland was on it, and he was good for the money. To which testimony defendants objected. The court sustained the objection, and rejected the evidence; which was the fourth error assigned.

[Duvall's Executor *v.* Darby *et al.*]

Under the charge of the court (GILMORE, P. J.), the jury found in favour of the plaintiffs the sum of $250.28, who thereupon sued out this writ, assigning for error here the ruling of the court below as above stated.

*Brader, Miller* and *Watson*, for plaintiff, argued—1. The court below were wrong in allowing the jury to take as evidence the mere impression of the witness : citing on this point, 1 Gr. Ev. 440 ; Carmalt *v.* Post, 8 Watts 411 ; 3 Wilson 427 ; McNally's Ev. 262 ; Carter *v.* Boehm, Sm. Lead. Cases 270.

2. The rejection of the testimony of Wolf, Wilson, and Weirich was improper. It was offered as rebutting evidence, and to meet the averment of the defendant that the $300 note only had been bought by Duval, and the $1650 note pledged as security for it. The rejected testimony was part of a chain of evidence previously offered by plaintiff, and was admissible, if only a link : Tams *v.* Bullit, 11 Casey 308 ; Brown *v.* Clark, 2 Harris 478. It was also evidence as part of the *res gestœ* of what occurred at and before the transaction in question : 1 Starkie 39–40 ; 1 Philips 231 ; 1 Gr. Ev. 135 ; Tompkins *v.* Saltmarsh, 14 S. & R. 275 ; Jones *v.* Brownfield, 2 Barr 55 ; Darling *v.* Little, 2 Casey 502 ; Klein *v.* Franklin Ins. Co., 1 Harris 247.

*Acheson* and *Wilson*, for defendants.—1. The objection was too late, the witness had been examined : Robinson *v.* Snyder, 1 Casey 203. The witness was giving the substance of Duvall's remarks, not the words used by him : 1 Gr. Ev. 440 ; Snell & Co. *v.* Moses, 1 Johns. 99 ; Phil. Ev. 749 (Note 526, p. 289); Riggs *v.* Taylor, 9 Wheaton 486.

2. As to the other assignments of error, the evidence rejected was of declarations of Duvall in the absence of defendants' bare assertions, unaccompanied with any acts : 1 Gr. Ev. 108, 110 ; Carter *v.* Gregory, 8 Pick. 165 ; 3 Phil. Ev. 155 (Note 165, p. 89); Romig *v.* Romig, 2 Rawle 248 ; 5 S. & R. 190, 295 ; 1 Peters 15 ; Scull *v.* Wallace, 15 S. & R. 231 ; 7 Johns. 95 ; McPeake *v.* Hutchinson, 5 S. & R. 298. The cases in 14 S. & R. 282 and 1 Harris 249, only show that in questions involving fraud a wide latitude is given ; but nothing of the kind is proved here : Douglass *v.* Mitchell's Ex'r., 11 Casey 445.

The opinion of the court was delivered, January 7th 1861, by
THOMPSON, J.—The testimony constituting the first bill of exceptions, having been received without objection, the court should have refused to sign a bill of exception upon it, and have left the party to a prayer for instructions to the jury to disregard it. The allowance of the exception by the court below does not validate it. This court may still treat it as too late, and

[Duvall's Executor *v.* Darby *et al.*]

disregard it. Had the court below treated the statement of the witness as a mere offer of testimony, and sealed a bill upon that basis, it might have been effectual—but that was not the case here.

Although the assignment of error based upon this exception might be disposed of by the foregoing remark, still we may add that the evidence was not objectionable on the ground taken. The witness uses "impression" and "recollection" as synonymous; for he says, "I can say my recollection is, the amount was not large." This was a clear declaration of the fact from memory—and his superadded remark, "It is merely but an impression," only expressed that his recollection was not distinct; for he further adds, "My best belief from what was said, is, that the sum was not large." He evidently uses the words "recollection" and "impression" interchangeably.

It is very apparent that the "impression" spoken of was derived from recollection—"It is my best recollection of the substance of the conversation—it is the best belief growing out of an impression made by the words," says the witness. The recollection of the words is referred to as the ground of the impression. There is no room, therefore, to infer that the impression was from any other source than that referred to, viz., the words; in such a case it was evidence to go to the jury: 1 Greenleaf, § 440; Carmalt *v.* Post, 8 Watts 411; Smith's Leading Cases 270.

There is no error in the remaining exceptions to the ruling of the court in the rejection of the offers by the plaintiff. The declarations of the plaintiff's intestate were not *res gestæ.* They were made to strangers, and not in the transaction between him and Darby, one of the defendants. As the offer contravened a rule that a party cannot make evidence for himself, the court was right in rejecting it. None of the cases cited make the offer an exception to the rule.

Judgment affirmed.